[No. 20345. In Bank. — June 1, 1889.]

# THE PEOPLE, RESPONDENT, v. J. MILTON BOWERS, APPELLANT.

CRIMINAL LAW — HOMICIDE BY POISONING — CIRCUMSTANTIAL EVIDENCE — PREJUDICIAL CONDUCT OF PROSECUTION. — When upon the trial of one accused of poisoning his wife by the use of phosphorus the evidence is almost entirely circumstantial, and there is some evidence tending to show that the death may have resulted, and probably did result, from natural causes, and no evidence that defendant had procured or had in his possession any phosphorus, and it is evident that the case is one of great difficulty, requiring unusual circumspection, and the utmost coolness and impartiality in its consideration, it is prejudicial error for the judge frequently to question witnesses in the interest of the prosecution, in such leading and suggestive manner as to give the jury the impression that he thought the defendant guilty, and also for the prosecuting attorney to refer to matters outside of the evidence calculated to influence the jury against the accused, although the court rebukes him, and instructs the jury to pay no attention to such statements.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The principal facts are stated in the opinion of the court. The conduct of the prosecuting attorney therein referred to consisted of the drawing of a written paper from his pocket, during his closing argument, accompanied by a statement to the jury that as counsel for the defendant "had gone out of the record" to give his statement with regard to defendant's return to Chicago and the other facts in the case, and that as he did not wish to put his recollection against theirs, "I propose," said he, "to read the record of this man [the defendant] from the chief of police of that city." He was immediately stopped by the court, with a rebuke for impropriety, after which he said, "I withdraw it; I did it on the assumption that as he went outside the record, I had a right to go out, with better evidence." The court, in its charge to the jury, instructed them to discard from their consideration statements of fact made by counsel.

*Colin Campbell*, and *Charles N. Fox*, for Appellant.

*Attorney-General Johnson*, for Respondent.

The COURT. — The defendant was convicted of murder, and judgment of death passed against him. He was charged with having poisoned his wife by the use of phosphorus. The evidence against him is almost entirely circumstantial. The existence of the most important facts was established only by the opinion of experts, and their existence is disputed by experts apparently equally competent. The significance of the supposed facts as inculpatory circumstances was also matter of difference. The judgment of medical experts was also taken upon the question whether all the clinical symptoms and pathological conditions indicated death from phosphorus poisoning. Upon this there was also a wide difference of opinion. Some symptoms and conditions usually present in cases of phosphorus poisoning were wholly absent in this case, or at least were not proven to exist. There were indications which, in the opinion of some of the physicians, indicated that death might have resulted, and probably did result, from natural causes.

There was atrophy of the liver, which was greatly reduced in size. It was admitted that this might have been occasioned by disease, and there was a difference of opinion as to whether the condition was, or could have been, caused by phosphorus poisoning. There was no jaundice. There was an ulcer in the stomach. Whether this could have been occasioned by phosphorus poisoning was a matter of controversy. Clots of blood were found in the heart, and in the ovaries and Fallopian tubes.

There is evidence that the illness of the deceased was brought on by a miscarriage, purposely caused by her own act, and that she did not wish her husband to know anything about it. There was no evidence that the de-

fendant had procured or had in his possession any phosphorus.

We do not feel like saying, under these circumstances, that as matter of law the jury could not be satisfied beyond a reasonable doubt of the guilt of the defendant, but it is evident that the case was one of great difficulty, and required unusual circumspection, and the utmost coolness and impartiality in its consideration.

Now, when we remember that the crime with which the defendant is charged is one of an unusually revolting character, it is easy to believe that one unaccustomed to judicial investigations might easily be made to feel, upon finding a mere probability of guilt, much short of the certainty required to authorize a conviction, a strong desire for the punishment of the defendant.

In view of all these circumstances, certain occurrences at the trial have a significance which in a different kind of a case we should hesitate to attribute to them. Unfortunately, the judge allowed himself rather frequently to question the witnesses, always in the interest of the prosecution, and often by putting questions which were leading and suggestive. We think the jury would be sure to get the impression that the judge thought the defendant guilty. Still more objectionable was the conduct of the prosecuting attorney. It is true, the court properly interfered, rebuking the attorney, and instructing the jury to pay no attention to the statements. But the statements were well calculated to influence the jury in a case of this character, and it is impossible for us to say that no injury resulted to the defendant therefrom.

We think, upon a careful examination of this record, that the interests of justice require a new trial before a judgment of this gravity should be carried into execution.

We do not see the necessity of passing upon the other points made. The questions are not likely to recur upon the new trial.

Judgment reversed, and a new trial ordered.

THORNTON, J., concurring. — The only poisoning charged in this case is that by phosphorus. If there was no poisoning by phosphorus, then it is not pretended that there was any poisoning at all. In my opinion, the preponderance of evidence supports the conclusion that there was no phosphorus poisoning. The indications of such poisoning were lacking. There was no garlicky odor on the breath before death, and there was no luminosity apparent when the test of the Mitscherlich process was applied after death. The garlicky odor, if apparent in the portion of the stomach and intestines subjected to examination after death, may be accounted for by two circumstances. Such odor is usually made apparent by the decay of the human body, and this decay had commenced when the portion of the stomach and intestines were taken from the body (to which the process above mentioned was applied) some seven or eight days after death. The other circumstance is this: that for some fifteen or twenty days prior to the death of Mrs. Bowers a compound containing phosphorus had been given to her by the physician or physicians in charge. These two facts account for whatever garlicky or alliaceous odor may have been perceived after death.

The evidence tends strongly to show that Mrs. Bowers died from disease indicated by the symptoms which manifested themselves during her illness and by the conditions of the body after death; this was the opinion of some of the physicians who testified upon the trial.

Upon a full consideration of the evidence in the case, I am of opinion that the preponderance of evidence sustains the conclusion that Mrs. Bowers did not die of phosphorus poisoning, and that, in the judgment of men of average intelligence and discretion, the evidence would establish the conclusion that the defendant could not be held to be guilty beyond a reasonable doubt. Where this is the case, there should be no conviction.

For the foregoing reasons, I am convinced that the

verdict ought not to stand, and that the judgment and order should be reversed, and the cause remanded for a new trial.

McFARLAND, J., dissented.