[Crim. No. 2676. Second Appellate District, Division One.—August 7, 1935.]

THE PEOPLE, Respondent, v. GRAY EVERETT McNEER, Appellant.

S. S. Hahn, W. O. Graf and Lawrence L. Light for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

EDMONDS, J., *pro tem.*—At midnight an automobile was found on a lonely road near Los Angeles in which was the dead body of Betty McNeer, who had shortly before obtained an interlocutory decree of divorce from the defendant. There were three bullet holes in her head. A gun with five exploded shells was lying in her lap. Also in the machine at the time was the defendant sitting in the driver's position slumped over the steering wheel. He had a bullet wound in his head, but was conscious. Charged with the murder of his wife a jury found him guilty of murder in the second degree.

He appeals from the judgment of conviction and from an order denying his motion for a new trial.

The jury was sworn and the taking of evidence commenced on October 25th. The defendant was present in court, but as a result of the bullet wound in his head he had lost the sight of one eye, the hearing of one ear and was partially paralyzed. A bullet in his head had not been removed. The record shows that during the examination of witnesses the defendant groaned and uttered incoherent mutterings, and repeated outcries such as "You wouldn't treat a yellow dog like you are treating me; why don't somebody give me something?" After one of these interruptions the judge said: "You will have to keep quiet; this sort of thing will not be allowed at all, Mr. McNeer. This sort of theatricalism has got to stop right now, and you might as well know it. Can't you do something with your client, Mr. Hahn?"

An adjournment was then taken until the next morning at which time counsel objected to the statement previously made by the judge and asked that the jury be instructed to disregard it. Thereupon the judge said to the jury: "Ladies and gentlemen of the jury, I am making this statement to you at the suggestion and with the consent of counsel for both sides, the People and the defendant. You, of course, could not help but observe the fact yesterday afternoon that the defendant was making more or less noise, talking and groaning, and the Court made some remarks about ceasing the theatricals, or something of that sort. That, of course, is something that you haven't any business to pay any attention to, and I want you to entirely disregard it. The defendant is here on trial for one specific offense, and all the jury have any right to consider whatever is the evidence in the case and nothing else. I know you will appreciate that and be able to do that, but for your information, in view of the apparent condition of the defendant, I am trying now to get hold of Dr. Blank, the jail physician, to come down here and tell us whether he thinks from his examination of the defendant there is any reason why the case should not continue. In other words, whether or not the defendant is in a condition physically and mentally that will preclude going ahead with the trial. Until we hear from Dr. Blank, we will go ahead, and if there is any demonstration on the part of the

defendant, you will disregard it. You are not here to try anything except the facts in this case."

Later in the day Dr. Blank, jail physician, called by the judge to testify as to the defendant's condition, stated that the defendant had been very sick; that he was suffering more from pain at that time than previously; that he was being given sedatives more or less continuously night and day; that his calling out and groaning in the courtroom was genuine and not an attempt to malinger; that his nervous collapse was such as to make it very difficult if not impossible to control himself; and that his sanity was affected to such an extent that he should not be compelled to go ahead with the trial. The judge, in commenting on this testimony, stated: "I therefore feel the case does come directly within the provisions of section 1368 of the Penal Code, because of the Court's own observation of the defendant and his actions during the trial up to this moment, and the testimony of Dr. Blank has raised in my mind a considerable doubt as to the present sanity of the defendant, and for that reason I now order that the question of his sanity be submitted to a jury, and the trial of this case suspended until it can be determined by the verdict of such jury. Now, that section further provides that the trial jury may be discharged, or retained according to the discretion of the Court, during the pendency of the issue of insanity. My own thought in those matters is that it is a good deal better for the trial jury to be discharged, and the matter of the present sanity of the defendant submitted to an entirely different jury, who have heard none of the facts of the case. . . . The trial of the present case will be suspended until the question of the sanity is determined by verdict of a jury impaneled to pass on that question, and because of the fact that there may be some delay caused by preparation on either case, or on both sides of the case, including possible examination by other physicians, if either side desires that to be done, I don't think that it will be fair to keep this jury together, and therefore, I will now discharge you, ladies and gentlemen, from further consideration of this case, and set the case for an inquiry into the defendant's sanity before another jury. You are now discharged from further consideration of this case."

A conference between counsel and the judge then occurred at the bench, the jury remaining in the box at the request

of the judge. He then stated that his previous order discharging the jury was revoked, and ordered the jurors to return the following Monday morning. The minute orders in connection with the foregoing are as follows: "The Court having a doubt as to the present sanity of the defendant, the Court orders the present trial suspended until October 29, 1934, at 10:00 a. m. All witnesses are instructed to return at that time. The Court orders the question of defendant's present sanity submitted to a jury. Jury is admonished and instructed. Jury is discharged. Order discharging jury is vacated. Trial is continued to October 29, 1934, at 10:00 a. m. at which time the question of present sanity of defendant will be set for hearing. Dr. Victor Parkin, Dr. Paul Bowers and Dr. Benjamin Blank are appointed by the Court as alienists to examine the defendant as to his present sanity."

On Monday morning the proceedings taken are shown by the minutes as follows: "On Court's own motion, trial proceeds at this time to determine the question of present sanity of defendant. The defendant objects to trial of question of present sanity of defendant. The defendant objects to trial proceedings on charge of murder on the grounds of being 'once in jeopardy'. Trial of murder charge is continued to October 30, 1934, at 10:00 a. m. All witnesses are instructed accordingly. The Court instructs and admonishes the jury. The Court now proceeds to trial of question of present sanity of defendant." This trial resulted in a verdict that the defendant was sane.

The following day the trial of the defendant on the murder charge was then resumed with the same jury which had commenced the trial of the case, over the objections of the defendant's counsel. During the argument on objections, the judge stated in the presence of the jury: "Are you going to add to that that there were but three witnesses, all of whom were stipulated to be qualified experts, and that all three of them agreed that the defendant was sane, and that he was malingering or faking?" Some time later in the trial he said: "Gentlemen, apparently it is going to be impossible to go ahead with the case this morning. I am informed that the defendant has been putting on his show in the presence of the jury, and there is no use trying to go ahead with the case now, so we will have to take a recess until 2:00 o'clock."

■ The first point made on appeal is that the statements of the judge amounted to misconduct which prevented a fair and impartial trial.

On each occurrence defendant's counsel made prompt objection to the remarks, and in two of the three cases the jury was instructed by the judge to disregard them. In one case the assignment by counsel of misconduct was not followed by any statement of the judge. In the other cases the statements made by him after the objections were urged cannot be said to have cured the effects of his remarks concerning the appellant. The defendant was the only one who testified concerning the occurrences at the time of the shooting. The credibility of his testimony was, therefore, of more than usual importance in the presentation of the defense. That the evidence in the case did not impress the jurors as being absolutely clear and convincing is evident from the fact that they deliberated for twenty-four hours and then returned a verdict finding the appellant guilty of murder in the second degree. Under all of the circumstances shown by the record in this case, the actions of the trial judge prejudiced the rights of the defendant, requiring a reversal of the judgment. As the Supreme Court said in the case of *People* v. *Mahoney,* 201 Cal. 618, 627 [258 Pac. 607]: "When, as in this case, the trial court persists in making discourteous and disparaging remarks to a defendant's counsel and witnesses and utters frequent comment from which the jury may plainly perceive that the testimony of the witnesses is not believed by the judge, and in other ways discredits the cause of the defense, it has transcended so far beyond the pale of judicial fairness as to render a new trial necessary. Neither can a plea for the application of the section of the Constitution save this situation. The fact that a record shows a defendant to be guilty of a crime does not necessarily determine that there has been no miscarriage of justice. In this case the defendant did not have the fair trial guaranteed to him by law and the Constitution."

■ Appellant also urges that by the action of the trial judge in vacating his discharge of the jury and afterward proceeding with the trial of the case, he was twice placed in jeopardy and was entitled to his discharge. While the judge did announce that the jury was "discharged", the record also

shows that the district attorney immediately asked if he and counsel for the defendant might approach the bench and confer with him "before this jury is discharged". The record then shows: "At which time Mr. Coleman, Mr. Hahn and Mr. Graf approached the Bench, and conferred with the Court, which conference was outside the presence of the jury, and not within the hearing of the reporter."

Following this conference the judge stated: "Ladies and gentlemen of the jury, counsel has just had a conference with me at the bench, out of your hearing, and it is the suggestion and the opinion apparently of both Mr. Graf, the attorney for the defendant, and of Mr. Coleman, the attorney for the People, that because of certain legal considerations, in which you are not interested, and which may or may not come up, that they desire the Court to revoke the order discharging this jury, so I do now revoke that order discharging the jury, and incidentally the record will show that the jury are still in the box, and have not left the box, and I ask you, ladies and gentlemen, to come back . . . Monday morning at 10:00 o'clock, . . . " To hold upon this record that the appellant was twice placed in jeopardy would be to construe the order according to a single sentence of the judge's statements, and ignore the reasonable effect of the entire proceeding. This is particularly true when we consider the testimony of the clerk who wrote up the minutes quoted, that they were written up after the day on which the events transpired "at the insistence of the defense counsel".

There is no claim that anything occurred between the time of the announcement that the jury was discharged and the time that order was vacated which prejudiced the rights of the appellant. The judge was on the bench during all of this time, and the jurors were in the box. After his conference with counsel the judge concluded to retain the jury under the provisions of section 1368 of the Penal Code. The second order was made almost immediately after the first one, and before any adjournment of court. Under such circumstances to hold that the first order was irrevocable would be to place the form above the substance of the proceeding. If any error occurred it was simply one of procedure which did not affect the substantial rights of the appellant.

The case of *Brownell* v. *Superior Court*, 157 Cal. 703 [109 Pac. 91], suggests the fundamental difference between a situ-

ation where a decision is made and acted upon by the parties before it is changed, and one made and changed while the parties are yet present before the court. And in the case of *People* v. *Williamson*, 134 Cal. App. 775 [26 Pac. (2d) 681], it was held that the court had jurisdiction to vacate an order discharging a single juror and recall him for further service in the case after he had left the box and the courtroom, where only a few minutes intervened and no further proceedings had been had in the meantime. In that case the court said: "No doubt the court in the stress of the moment intended to discharge the juror. However, before the latter had reached the elevator he was recalled, after it was ascertained that if the case could be continued until the following Monday the trial could proceed. We think the jurisdiction of the court over the proceedings before it gave it the power to do as it did; that its action in effect rescinded the order theretofore made excusing the juror, while yet it could do so, and that the result of such action was to leave the case where it was before the incident occurred. . . . Furthermore, it is not claimed that anyone talked to the juror or that anything happened to disqualify him other than that we have related, and we fail to see how any prejudice resulted. Even if there was a technical error, it came within the healing provisions of section 4½ of article VI of the Constitution."

The facts forming the basis for the plea of double jeopardy were undisputed and an issue of law only was presented upon which the jury was correctly instructed. (*People* v. *Newell*, 192 Cal. 659, 668 [221 Pac. 622].) The failure of the jury to render a verdict upon the plea did not prejudice the appellant. (*People* v. *Frank*, 75 Cal. App. 74, 82 [241 Pac. 924].)

Because, for the reasons hereinabove appearing the appellant was deprived of his right to a fair trial, the judgment is reversed and the order denying the motion for a new trial is reversed.

Conrey, P. J., and Houser, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 5, 1935.