[Crim. No. 2546.   First Dist., Div. Two.   Oct. 26, 1948.]

THE PEOPLE, Respondent, v. ERNEST W. BYRD, Appellant.

Ernest W. Byrd, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Dave K. Lener, Deputy Attorney General, for Respondent.

DOOLING, J.—The defendant was convicted by a jury of the crime of incest, and he presents this appeal from the judgment in pro. per. The complaining witness was his 15-year-old daughter. The sordid details of the daughter's testimony need not be enlarged upon but, as so often happens in such cases, the testimony of the daughter concerning the alleged offense was not substantially corroborated by any other witness and was flatly contradicted by the appellant. The daughter had fallen in love with a Filipino whom she desired to marry and the appellant had had the Filipino arrested charging him with the possession of a pistol in violation of the law forbidding the possession of firearms by aliens. The daughter's accusation against the father followed closely on the arrest of her lover and it was appellant's theory on the trial that his daughter's accusation against him was motivated by her resentment at his action in having her lover arrested. The daughter recanted her accusation against appellant in two letters written to the authorities and then again changed her story and testified against him on the trial. That such accusations are not infrequently fabricated by minors the experience of any trial judge will attest.

A reading of the record makes it very clear that the case was extremely close, depending upon the resolution of the conflicting testimony of the defendant and his 15-year-old daughter, and the decision of the jury was almost wholly dependent upon the result of its weighing the conflicting stories of these two witnesses. The courts have frequently remarked that in cases of this nature the very accusation arouses feelings of revulsion and animosity which impose upon the trial judge the highest standards of fairness in the conduct of the trial. It will suffice to quote the following from *People* v. *Long*, 63 Cal.App.2d 679, 686-687 [147 P.2d 659] :

"It is well understood that cases of this type must be tried with the utmost fairness and impartiality in order that the defendant may receive a fair trial. Accusations such as were made by defendant's step-daughter of themselves arouse feelings of animosity and prejudice against the accused, and the

testimony of the accuser in such cases frequently is, and in this case it certainly was, of such a nature as to depict the defendant as a depraved individual. In *People* v. *Adams* (1939), 14 Cal.2d 154, at 167-8 [93 P.2d 146], it was said: 'In such a situation, the only defense available, ordinarily, to the accused is his own denial of any asserted misconduct, together with evidence of a former good reputation; otherwise, he is utterly defenseless and at the mercy of a jury which probably is very much prejudiced. . . . It is because of the recognized existence of the ease with which convictions of men, even those of unblemished reputation, may be secured in cases of the instant kind that courts are at pains to insist upon fair trials in all respects being accorded to the accused. Errors committed either by the prosecution or by the court in the course of the trial, which ordinarily might be considered trivial and as of no material consequence from a standpoint of adverse effect upon the rights of a defendant, may become of great importance when committed in a case of the character of that here involved.' And in *People* v. *Putnam* (1942), 20 Cal.2d 885, it was said, at p. 891 [129 P.2d 367] : 'It has long been recognized that there is no class of prosecutions "attended with so much danger or which afford so ample an opportunity for the free play of malice or private vengeance," (Citing) *People* v. *Benson* (1856), 6 Cal. 221 [65 Am.Dec. 506] ; *People* v. *Lucas* (1940), 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485] ; *People* v. *Adams, supra*; *People* v. *Baldwin* (1897), 117 Cal. 244 [49 P. 186] ; and *People* v. *Vaughan* (1933), 131 Cal.App. 265 [21 P.2d 438].)' Our courts have many times quoted *People* v. *Benson, supra,* to the same effect."

On the defendant's cross-examination he was asked if he had ever been convicted of a felony. He answered that he had been convicted of burglary in Baltimore, "but it was under circumstances that I wasn't guilty of it." The trial judge interjected himself into the cross-examination to ask: "Is the statement that you never committed the crime just as true as the—you never committed the crime of which you were convicted in Baltimore, is it equally true? Are these just as false as the other burglary?" From the form of the question the jury could only infer that the trial judge was not only questioning the truth of the defendant's testimony concerning the burglary conviction but the truth of his denial of the commission of the crime for which he was on trial as well. "Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed

during trials. For this reason, and too strong emphasis cannot be laid on the admonition, a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant.'' (*People* v. *Mahoney*, 201 Cal. 618, 626-627 [258 P. 607].)

Our courts have many times reversed convictions in criminal cases because of intimations by the trial judge during the taking of testimony that the defendant or his witnesses was not believed by the judge. (See *People* v. *Mahoney, supra*, 201 Cal. 618, 621-627; *People* v. *Boggess*, 194 Cal. 212, 239-240 [228 P. 448]; *People* v. *Bowers*, 79 Cal. 415, 417 [21 P. 752]; *People* v. *McNeer*, 8 Cal.App.2d 676, 681 [47 P.2d 813]; *People* v. *Singh*, 78 Cal.App. 488 [248 P. 986]; *People* v. *Conboy*, 15 Cal.App. 97 [113 P. 703]; *People* v. *Long, supra*, 63 Cal.App.2d 679, 682-686.) The conduct of the trial judge in the case before us was not comparable in degree to that considered by the courts in any of the cited cases, but the task of an appellate court must in every such case be to weigh the intimation of the judge of his lack of credence in the testimony against the facts of the particular case and to determine whether under all the circumstances the defendant has suffered prejudice in the minds of the jury. In view of the closeness of this case, the fact that the defendant was forced to rely exclusively on his own testimony, and the repugnance which the very nature of the charge would arouse in the minds of any jury of normal men and women we are satisfied that the defendant suffered prejudicial error. The case is not unlike that considered by the Colorado Supreme Court in *Laycock* v. *People*, 66 Colo. 441 [182 P. 880]. We quote from pages 880-881 [182 P.]:

''The court asked defendant, while he was upon the witness stand as a witness in his own behalf, the following questions:

'' 'By the Court: Q. Mr. Laycock, what is your explanation of why you happen to be here now as a defendant in this case? A. Why, I believe it is due to excitement, or something like that, or a mistake. Q. Do you mean to tell these jurors your wife and your stepdaughter are trying to frame up a case on you?'

''These questions might be unobjectionable, or not reversible error, had they come from the district attorney; but, coming from the court, they were prejudicial. They tended to induce in the minds of the jury a belief that, in the court's opinion, defendant was guilty. With the witnesses so closely pitted against one another, it is hard to say what influence, com-

ing from the bench, these questions may have had upon the minds of the jury; but that they were prejudicial to the defendant there can be no doubt. The jury may have believed the defendant's story, or, if the whole evidence on the trial raised a reasonable doubt in their minds as to his guilt, it was their duty to give him the benefit of the doubt and acquit him. Such questions propounded from the bench may have had a deciding weight against the defendant.''

▉ While no objection was made to this question when asked by the court this in our judgment is one of those cases in which the damage was irreparable once the question was asked and hence the error may be urged on appeal despite the failure to object in the trial court. (See *People* v. *Singh, supra,* 78 Cal.App. 488, 495-496; *People* v. *Freitas,* 34 Cal.App.2d 684, 688 [94 P.2d 397].)

If the appellant is guilty a second jury will doubtless convict him. If he is innocent he has been irreparably injured unless he is granted a new trial.

The judgment is reversed and the defendant is remanded for a new trial.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied November 10, 1948, and respondent's petition for a hearing by the' Supreme Court was denied November 22, 1948.