[Crim. No. 2553.    First Dist., Div. Two.    Jan. 20, 1949.]

THE PEOPLE, Respondent, v. HUEY MALICOAT,
Appellant.

S. C. Masterson and Jos. Genser for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Francis W. Collins, District Attorney, and Douglas M. Quinlan, Deputy District Attorney, for Respondent.

DOOLING, J.—The defendant appeals from two judgments of conviction after a trial before a jury of two separate violations of Penal Code, section 288. The offenses were alleged to have been committed on the person of a 12-year-old girl. The direct evidence, as is usual in cases of this sort, was limited to the testimony of the child that the defendant had had two separate acts of intercourse with her, one on Easter Sunday, 1947, and the other on or about December 18 of that year. The defendant's denial of the charges was explicit and categorical. He was corroborated as to the first offense charged by the testimony of his wife, who testified without objection that defendant and the complaining witness were never out of her sight on the afternoon of April 6, the time at which the first offense was charged to have been committed in a hole on a hillside during an Easter egg hunt. As to the second he proved an alibi by the records of his place of employment that he was at work every day from December 15 to December 19 inclusive at the hour when the complaining witness testified that the second offense occurred.

There was conflicting testimony as to whether defendant endeavored to bribe the child's parents to drop the charges or the child's father attempted to extort money from the defendant as his price for not pressing them, and likewise conflicting testimony as to whether defendant persuaded the child to write a note retracting the charges or the child voluntarily wrote the note. There was also testimony indicating that prior to the time when the charges were first made the child's father had evidenced a feeling of animosity against the defendant.

Against this background occurred the errors upon which the appellant relies for a reversal. A sister-in-law of the defendant, Dorothy Malicoat, testified to a conversation with the complaining witness in which the child accused her father of having "bothered her." The witness' testimony on

direct examination was limited strictly to this conversation. On cross-examination this witness was asked, over repeated objections that it was not proper cross-examination, if on three occasions in her presence the defendant had not taken the child into her bedroom and if she had not told a police officer, Priest, that defendant in her presence had taken the child into her bedroom and had intercourse with her. The witness' answer to both questions was "No."

The scope of the cross-examination of a witness is specifically limited by Code of Civil Procedure, section 2048 to "any facts stated in his direct examination or connected therewith." The matters opened on cross-examination had no logical connection with the conversation which the witness testified to on her direct examination and tended in no way to impeach or contradict that testimony. It was therefore error to permit this cross-examination. (27 Cal.Jur., Witnesses, § 77, p. 98 et seq.; *People* v. *Padilla,* 143 Cal. 158 [76 P. 889].)

This error standing alone might not be great in view of the witness' negative answers. It was aggravated, however, by the prosecution calling Officer Priest in rebuttal. Over proper objection Priest was permitted to testify as follows concerning his conversation with Dorothy Malicoat:

"I asked her if she knew anything about the charges that Huey Malicoat was charged with and she says, 'I do', and I says, 'What do you know?' and she says, 'I know this has been going on for some time', and I says, 'Why didn't you report it?' and she said, 'I was afraid to.' I said, 'What do you mean you were afraid to?' She said, 'I was afraid of Huey Malicoat.' . . . She stated that Patsy was in her home on three occasions. The defendant entered and got Patsy . . . and taken her in her back bedroom, and she interfered, and tried to stop it, and told Huey Malicoat to let the girl alone, and at that time Huey Malicoat shoved her out in her kitchen . . . and told her to stay in her front room and mind her own business if she knew what was good for her."

Thus under the guise of impeaching the testimony improperly elicited from the witness on cross-examination the prosecution got very inflammatory and corroborative hearsay testimony before the jury which gave a picture to the jury of a man of the most depraved, brazen and brutal type and went far beyond the testimony of the complaining witness in this respect. The error was two-fold. Having asked the witness only if she had not made a certain statement the testimony of Priest should, even if proper, have been limited to the lead-

ing question whether the witness had made that statement to him. No foundation was laid for the rest of the conversation as to which the witness had not been interrogated. (Code Civ. Proc., § 2052; 27 Cal.Jur., Witnesses, § 134, pp. 161-162.) "It is indispensable to a valid impeachment on the score of inconsistent statements that the statement sought to be proved be the one to which the attention of the person sought to be impeached was called by the foundation questions. The proper and usual procedure is to ask the impeaching witness the direct question whether the alleged statements were made at the time and under the circumstances specified, and such questions are not objectionable as being leading." (27 Cal.Jur., Witnesses, § 139, p. 166; *McLaughlin* v. *Los Angeles Ry. Corp.,* 180 Cal. 527, 539 [182 P. 44].) Counsel should be careful to limit the impeaching question to the precise conversation as to which the foundation has been laid in interrogating the witness sought to be impeached. It is error to permit the impeaching witness to testify to any other matter which may have been stated in the conversation.

The more grievous error, however, was to allow the testimony at all. It is elementary that a cross-examiner is bound by the witness' answer to irrelevant questions and "may not cross-examine his adversary's witnesses upon irrelevant matters for the purpose of eliciting something to be contradicted." (27 Cal.Jur., Witnesses, § 81, p. 107.) If the witness had answered the improper questions put to her on cross-examination in the affirmative the damage to the defendant would be clear. (*People* v. *Padilla, supra,* 143 Cal. 158.) The damage is equally clear when the evidence is introduced as impeachment of the witness' testimony given in answer to the improper questions put on cross-examination. (*People* v. *Worthington,* 105 Cal. 166 [38 P. 689].)

It is true that the court instructed the jury that the evidence was introduced only for impeachment purposes and was not to be considered as proof of the truth of the facts stated. Where evidence is properly admissible for a limited purpose only the courts recognize the danger that it may be improperly considered by the jury for other purposes (*Adkins* v. *Brett,* 184 Cal. 252, 256-259 [193 P. 251]) but that is a risk which must ordinarily be taken if the evidence is admissible for some purpose, and a cautionary instruction limiting its use to the proper purpose is all the protection that the party can be given under the circumstances. For this reason it is generally held that there is no prejudice from the admission

of such evidence where the jury is properly instructed as to its limited purpose. (10 Cal.Jur. § 105, p. 815.) But where the evidence is not admissible for any purpose the reason for the rule ceases. There is no justification for the risk of its misuse by the jury and if the fact of its misuse seems at all probable the courts should not hesitate to find prejudice in the error.

The error was further aggravated by the statements of the prosecution in argument to the jury. On the opening argument the prosecutor said of Dorothy Malicoat: "Also when asked about the defendant being in her apartment with Patsy . . . she denied the same, although she had told Officer Priest on the 21st of February that he was there, and that he did certain acts. And had been there on more than one occasion committing the acts." In his closing argument he said: "Of course, they admit she is interested, Dorothy Malicoat, and she is interested in seeing that her brother-in-law is acquitted, and there is no question that she is, and maybe that is the reason she changed her story from the first story she told."

The jury considered the case a close one. After deliberating for some time they returned to court to ask the judge if they could recommend leniency in case they found the defendant guilty. At that time the following colloquy occurred:

"The Court: . . . I told you not to discuss punishment and not to consider it in any way because that is not the jury's concern under the law, do you understand that, and you are not to consider it, the question of punishment. Didn't I so state to the Jury?

"Juror (Mrs. Heady) : Yes, you did, but we can't decide.

"The Court: Can't what?

"Juror (Mrs. Heady) : The evidence is so circumstantial."

When it did return its verdict the jury included as a part thereof a recommendation of leniency in spite of the court's admonition. If the jury had not entertained some misgivings it would hardly have made such a recommendation in this case.

Recently in *People* v. *Byrd*, 88 Cal.App.2d 188 [198 P.2d 561], we reiterated the often stated truisms that charges of this character are easy to make and difficult to disprove, that they are calculated to arouse the passions of jurors and that for these reasons extreme care should be taken to fully protect every legal right of the defendant. Prejudice to the rights of the defendant in this case from the errors discussed seems clear.

The judgments are reversed and the defendant is remanded for a new trial.

Goodell, J., concurred.

NOURSE, P. J.—I dissent.

The witness was lying and it was not only the privilege but the duty of the district attorney to convince the jury that she was lying. The cross-examination covering inconsistent statements was directed to that end.

A petition for a rehearing was denied February 4, 1949, and respondent's petition for a hearing by the Supreme Court was denied February 17, 1949. Edmonds, J., and Traynor, J., voted for a hearing.