[Civ. No. 5830. First Appellate District, Division Two.—August 4, 1927.]

EUNICE E. KINNEAR, Administratrix, etc., Appellant, v. LORENZO MARTINELLI, Respondent.

Haswell & Martin and Charles W. Haswell for Appellant.

Cooley & Gallagher and Cooley, Crowley & Gallagher for Respondent.

THOMPSON (R. L.), P. J., *pro tem.*—This is an appeal from a verdict in favor of defendant, in an action for damages for the death of the husband of plaintiff which occurred as the result of coming in contact with an automobile while crossing a city street.

The plaintiff complains of the giving of a certain instruction, and the refusal of others.

March 7, 1924, about 9:30 at night, the defendant in company with an associate was driving his open Buick automobile northeasterly along Mission Street in the city of San Francisco. They were going to the Ferry Building and had reached a point in the vicinity of Acton Street, traveling at the rate of fifteen or eighteen miles per hour along a course midway between the most easterly rail of the track and the easterly curbing. Suddenly they observed midway in the block, some twenty or twenty-five feet distant, a pedestrian hastening across Mission Street from the westerly to the easterly side where his car was parked. He had just passed the easterly rails of the track, and ap-

parently neither heard nor saw the approaching machine. The street was poorly lighted at this point. The lights from the automobile disclosed objects only fifty or sixty feet ahead of the machine. There were no other vehicles or pedestrians in sight. There were no witnesses to the accident except the occupants of the defendant's machine and the evidence is uncontradicted to the effect that the defendant immediately upon seeing the pedestrian sounded the horn and applied his foot-brake. There is no evidence of any attempt to use the emergency brake. The deceased was struck by the left front fender of the machine, which was badly damaged; the left plate-glass windshield on the machine was shattered from the impact; the machine ran some forty feet after the brake was applied before it was stopped. The body of the deceased lay near the easterly rail of the track from ten to twenty feet from the rear of the car. He was unconscious and was taken by the defendant to the hospital. An immediate examination by the hospital physician disclosed the fact that the injured man was suffering from a basal fracture of the skull; a broken fibula of the right leg, and numerous bruises and contusions about the face and head. He was also bleeding from the nose and ears. There was no evidence of liquor on his breath. He never recovered consciousness and died from the effects of these injuries a few days later.

The uncontradicted evidence of expert witnesses indicate from actual experiments that a similar Buick automobile traveling on a level pavement at the rate of twenty miles an hour could be stopped within seventeen feet by the application of the foot-brake alone; that the same machine traveling at the rate of fifteen miles per hour could be stopped within the space of twelve feet, and that properly adjusted headlights should disclose objects two hundred feet in advance of the car.

At the request of defendant the following instruction was given to the jury: "I instruct you that in the exercise of ordinary care for his own protection, the deceased was under the duty of looking to the south on Mission Street before he crossed to the east of the center line of Mission Street in order to ascertain whether any vehicles were approaching from the south, and if so, whether any such vehicle was within such a distance as would make it

hazardous for the deceased to attempt to cross in front of such vehicle. If you find from the evidence that the deceased negligently failed to use such ordinary care for his own safety and protection and that such failure, if any, proximately contributed to the accident, then your verdict must be in favor of the defendant.''

This instruction was given the full literal force of its language by a refusal to give the following instructions requested by plaintiff: (a) ''I instruct you that in the absence of evidence to the contrary, there is a legal presumption that the deceased used due care on his part,'' and (b) ''I instruct you that in the absence of any evidence to the contrary the law presumes that the deceased did everything that a reasonable, prudent man would have done under the same circumstances for the protection of his own safety.''

Plaintiff's last two instructions, which were refused, correctly stated the law (*Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500 [143 Pac. 714]; *Blackwell* v. *American Film Co.*, 189 Cal. 689, 698 [209 Pac. 999]), and were proper instructions under the evidence of this case for the reason that no human witness saw the deceased until after he had passed the center of Mission Street, and suddenly appeared to the defendant twenty or twenty-five feet ahead of him easterly of the rails on his way across the street. For aught that the evidence shows, and for aught that any living person knows, the deceased may have stopped and cautiously looked up and down Mission Street before he entered the street, and before he attempted to cross the center line thereof. For aught that the evidence shows he may have seen the defendant's car approaching at such a distance that in the exercise of all due care, he would have been justified in assuming he had ample time to cross the street ahead of the machine, if it had been running at a lawful rate of speed. Since no witness testified, and no one knows what the deceased did for his own protection before he reached the center of Mission Street, it was particularly appropriate in the absence of evidence to the contrary that the jury should have been instructed that the law presumed that he acted with due care and caution. He was entitled to the benefit of this presumption, in the absence of evidence to the contrary.

■ The first instruction above quoted was given at the request of defendant and was addressed to his special affirmative plea of contributory negligence. The burden is upon the defendant to prove affirmatively contributory negligence of the deceased, unless it is admitted by the pleading or established by the evidence of plaintiff. (19 Cal. Jur. 697, sec. 119.) There is absolutely no evidence in the record as to whether the deceased did or did not look south along Mission Street "before he crossed to the east of the center line" thereof—the presumption of law in this particular case is that he did so look to the south.

■ Instructions should be based upon evidence actually adduced or upon reasonable inference from the evidence disclosed by the record. (24 Cal. Jur., p. 830, sec. 95; *Risdon* v. *Yates,* 145 Cal. 210 [78 Pac. 641]; *Hirshberg* v. *Strauss,* 64 Cal. 272 [28 Pac. 235].) ■ The only evidence in this record with respect to the conduct of the deceased was that he was first seen easterly of the rails of the track walking rapidly in an easterly direction across the street and that he did not look up while the defendant's car traversed the intervening space of twenty or twenty-five feet until he was struck. To conclude, from this circumstance, that he had therefore not looked easterly along Mission Street before he reached the center thereof is mere speculation and contrary to the presumption of law. We are of the opinion that the giving of this instruction under the facts of this particular case where there is a total absence of any evidence to show the conduct of the deceased during the period covered by the instruction is fatal error. The burden was on the defendant to show that the deceased failed to look easterly along Mission Street "before he crossed to the east of the center line"; defendant failed to meet this requirement; there was no evidence in the record of the conduct of the deceased at that particular time; the presumption of law refutes this charge of negligence. The instruction is therefore not applicable to the facts and is erroneous.

In the case of *Nickell* v. *Rosenfield,* 82 Cal. App. 369 [255 Pac. 760], the facts were similar in most respects to those of the instant case. A rehearing of that case was denied by the supreme court. A judgment for the defendant was reversed for the erroneous giving of the following

instruction: ''In crossing Figueroa Street it was the duty of plaintiff in the exercise of ordinary care for her own protection to look to the left and to the right as well as ahead of her, and to particularly direct her attention to her left while she was crossing the easterly side of Figueroa Street, and this duty was not fully performed by merely looking to the left as she stepped from the curb to the street, but the duty to exercise ordinary care in this respect was imperative upon her during all the time that she was crossing; and, therefore, if you believe from the evidence that the plaintiff failed to perform this duty, and that her failure so to do was the proximate cause of the accident and the injuries sustained by her, then your verdict must be in favor of the defendant. . . . ''

The vice of the foregoing instruction which was pointed out by the court is that it attempts to specify in too great detail as a matter of law, the precise acts of a pedestrian in attempting to cross a street, which would constitute negligence. The court there said: ''The placing of too high a duty upon plaintiff might leave the jury generally impressed that the decree of care incumbent upon her for her own protection was far greater than the law required.''

■ Ordinary care is all that is required of a pedestrian in crossing a street. The question of the exercise of ordinary care is largely a question of fact to be determined by the jury from all the circumstances surrounding the particular case under consideration. ■ In determining whether a pedestrian used such due care as is commensurate with apparent present dangers the jury should consider the location involved, the existing state of the traffic, the opportunity for obtaining a clear view of the street from every direction whence approaching vehicles might endanger an attempt to cross the street; the presence of obstructions to the view such as buildings, passing cars, driving storms, clouds of dust, or darkness, and from these and all other facts and circumstances present, determine whether the particular pedestrian used that degree of care which would be required of an ordinarily prudent person under like circumstances.

In *Burgesser* v. *Bullock's*, 190 Cal. 673 [214 Pac. 649], it is said: ''The question of whether or not the pedestrian is negligent in crossing a street is one which, in the absence

of express statutes regulating his conduct, must ordinarily be left to the jury, for the conduct of an ordinarily prudent person under such circumstances must be largely determined by the condition of the traffic at the particular time and place in question." (*Gett* v. *Pacific Gas & Electric Co.*, 192 Cal. 621, 627 [221 Pac. 376].)

█ The rule is firmly established that neither pedestrians nor vehicles have any superior right to the use of a public street. (*Mayer* v. *Anderson*, 36 Cal. App. 740 [173 Pac. 174].) Each must exercise the privilege of its use with due regard to the other, and subject to such reasonable restrictions as may be imposed. █ The degree of prudence required of both pedestrians and drivers of vehicles must ordinarily be determined from the facts surrounding each particular case.

In support of the foregoing objectionable instruction given to the jury in this case the respondent relies upon *Sheldon* v. *James*, 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8], *Klusman* v. *Pacific Electric Ry. Co.*, 190 Cal. 441 [213 Pac. 38], *Chrissinger* v. *Southern Pacific Co.*, 169 Cal. 619 [149 Pac. 175], *Davis* v. *Breuner Co.*, 167 Cal. 683 [140 Pac. 586]; *Ogden* v. *Lee*, 61 Cal. App. 493 [215 Pac. 122], *Mayer* v. *Anderson, supra*, and *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631]. None of these cases are predicated on facts similar to the one at bar. Based upon the particular facts of the respective cases they merely stated that in crossing a street congested with traffic a pedestrian "must look both ways," and "on neither side of a congested street is one relieved from exercising ordinary care for his own protection," and "It was a duty devolving upon plaintiff, as the act of an ordinary prudent man, immediately before placing himself in a position of danger, to look in the direction from which danger was to be expected"; that this requirement "was a continuous duty, not met by looking once, and then looking away," "that a pedestrian must be alert and watchful and must look up and down the street," and that it is not sufficient for one to merely "look straight ahead" upon entering a danger zone of a congested street. In each of these cases, however, there was evidence upon which the court was warranted in making use of such declarations.

Finally, the respondent cited with confidence in support of this objectionable instruction, the concurring statement of the supreme court in denying a rehearing in the case of *Finkle* v. *Tait*, 55 Cal. App. 425, 432 [203 Pac. 1031], in which a directed verdict in favor of the defendant was affirmed. The supreme court said: "It (the accident) occurred after dark on a public street; the headlights of the automobile were lighted and would have been plainly visible to him (the plaintiff) if he had looked. . . . The only evidence on the subject shows that the headlight was in good order and that it was clearly visible at a considerable distance. It follows, therefore, that he either failed to take the trouble to look for automobiles on that side of the street as he crossed, or that he saw the automobile and carelessly walked in front of it, There was evidence that he was carrying a box of raisins twenty-three inches long, thirteen inches wide, and ten inches thick on his shoulder in such a position that it may have obscured his vision. If that was the case then it was negligent for him to attempt to cross the street with his vision obstructed in this manner. . . . "

The opinion of the appellate court, which was approved in this case, was written chiefly upon the theory that plaintiff failed to establish proof of any negligence on the part of the defendant. In denying the rehearing the supreme court, however, does assert that the deceased was guilty of contributory negligence, and stresses the fact that at the time of the accident he carried upon his shoulder a box, which the court apparently assumed obscured his view, and the carrying of which under such circumstances, might constitute negligence. We do not understand that the supreme court meant to infer that merely because a pedestrian was struck, while crossing a street at night, by an automobile with lights in good condition that, therefore, the pedestrian must have seen the machine and hence was guilty of negligence. Clearly, this would be speculative and would be usurping the province of the jury. But what the court did say, and what seems entirely logical, was that a pedestrian crossing a street in the dark, with his view obscured by a box which he carried on his shoulder, would be guilty of negligence under the particular facts of that case.

But under no circumstances can that case furnish authority in support of the problem involved in the instant case, for in the Finkle case the defendant was not deprived by the refusal of appropriate instructions, of the benefit of the presumption of law to the effect that, in the absence of evidence to the contrary, he was deemed to have acted with reasonable prudence. Nor was an instruction given in the Finkle case, based upon a total absence of evidence, charging the deceased with contributory negligence for the omission of an act, the burden of proving which rested on the defendant.

Because of error in the giving and refusing of the instructions heretofore referred to, we are of the opinion that the judgment should be reversed. It is so ordered.

Nourse, J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1927.