[Civ. No. 6078. First Appellate District, Division One.—April 9, 1928.]

CARL RIGNELL, Respondent, v. ANTHONY FONT et al., Appellants.

Wm. M. Abbott, K. W. Cannon, J. E. Reardon and Enid Childs for Appellants.

Edmund J. Holl for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment of $3,500 which was awarded the respondent as compensation for injuries sustained as a result of having been struck by appellants' automobile while he was engaged in attempting to cross the Embarcadero at San Francisco.

The appellants urge a reversal of the judgment on the grounds that (1) the evidence affirmatively discloses the presence of contributory negligence on the part of respondent, and that (2) the trial judge erred in sustaining an objection to appellants reading in evidence a written statement of the circumstances of the accident made by one of

their own witnesses prior to the trial. It is claimed this statement was competent for the purpose of impeachment.

At the time of the accident the respondent was engaged as a stevedore at pier 29 on the waterfront at San Francisco. For ten years the appellant Anthony Font has been the manager of the harbor car service for the appellant California Stevedore & Ballast Company, and was thoroughly familiar with the traffic in that vicinity. At the time of the accident Font was engaged in driving his employer's Chevrolet car northerly along the Embarcadero, which is a broad paved street parallel with and adjacent to the waterfront north of the Ferry Building in San Francisco. Car tracks traverse the westerly side of the Embarcadero, which street, at the time of the accident, was undergoing repairs, in the process of which an excavation had been dug and a mound of dirt was piled in the center of the street leaving an open space of some twenty-five or thirty feet in width for the use of vehicles on the easterly side. The street was not congested with traffic. At 11 o'clock A. M. on January 24, 1924, the respondent, who was a man in the full vigor of life, possessing good eyesight and hearing, walked southerly from the place of his employment at pier 29 along the sidewalk to a point opposite pier 25, where he paused at the curbing facing the street, and looked both to his right and left for approaching vehicles. Upon the opposite side of the easterly portion of the Embarcadero he observed a truck some three hundred feet to the north traveling southerly at the rate of eight or ten miles an hour. Toward his left he saw a car, near at hand, which was being driven northerly close to the curbing upon which he stood. Beyond this car was a Fordson tractor coming slowly along the street in his direction. Behind this tractor, nearly a block away, was the appellants' Chevrolet car approaching in a course near the easterly curbing at a rate of thirty or thirty-five miles an hour. The respondent waited until the first car had passed the point where he stood, and then proceeded to cross the Embarcadero in a westerly direction for the purpose of obtaining his lunch at a restaurant. He passed ahead of the tractor and reached a point about eighteen feet westerly from the curbing, where he stopped to permit the truck,

which was approaching from the north, to pass ahead of him. Here he stood facing southwesterly so as to keep an eye on the truck and at the same time to watch the north-bound vehicles which were approaching along the easterly portion of the street. The appellants' Chevrolet had over-taken the Fordson and as it passed the tractor, suddenly without warning or the sounding of a horn, respondent saw the Chevrolet at a distance of about twenty-five feet swerve toward him. It was then traveling at the rate of twenty-five or thirty miles an hour, and apparently its course was changed in order to pass the tractor. Mr. Law-son, the driver of the tractor, testified that the Chevrolet passed upon his left and that the accident occurred when it reached a point about twenty-five feet ahead of him. Observing the sudden change in the course of the Chevrolet, the respondent jumped to avoid the collision, but was struck and sustained a compound fracture of the left leg, together with other bruises and contusions. The testimony of Mr. Miller indicates that the Chevrolet ran twenty-five or thirty feet beyond the point of contact before it was brought to a stop, and skid-marks were found upon the surface of the pavement. The respondent's version of the accident was substantially corroborated by two other witnesses. The ap-pellant Font testified that at the time of the accident he was driving northerly at the rate of only fifteen to twenty miles an hour along a course three or four feet from the easterly curbing of the Embarcadero, when suddenly, with-out warning and without looking in his direction, the re-spondent sprang from the curbing directly in front of his machine, and that in spite of prompt application of his brakes he was unable to avoid the collision.

It is apparent that if appellants' version of the circum-stances were true the respondent would clearly be guilty of contributory negligence. Upon the contrary, if respond-ent's version is correct, it follows that this court could not find as a matter of law that he was guilty of contributory negligence, for after looking both ways before leaving a point of safety at the easterly curbing, he succeeded in crossing nearly two-thirds of the traveled portion of the street to a point where a prudent person would ordinarily have a right to assume he would be safe from north-bound

vehicles traveling along the easterly portion of the street. It cannot reasonably be said that before one may lawfully attempt to cross a busy thoroughfare, in the absence of an ordinance to the contrary, he must wait upon the curbing until he can cross the entire street ahead of all vehicles which may be in sight. If this were true a pedestrian might wait all day long in vain for an opportunity to venture across a city street congested with traffic. Neither vehicles nor pedestrians ordinarily have a superior right to the use of a public street, but, upon the contrary, each must exercise the privilege with due regard to the rights of the other. (*Mayer* v. *Anderson*, 36 Cal. App. 740 [173 Pac. 174]; *Kinnear* v. *Martinelli*, 84 Cal. App. 721 [258 Pac. 686].) A pedestrian is required to exercise constant vigilance for his own safety while crossing a busy city street, but this duty will not ordinarily charge him with contributory negligence merely because he fails to anticipate danger from an automobile which is traveling upon the wrong side of the street. (*Wright* v. *Foreman*, 86 Cal. App. 595 [261 Pac. 481].) In the exercise of ordinary care a pedestrian may rely upon the expectation that automobiles will conform to the customary rules of traffic and travel only upon the proper side of a street. (*Harris* v. *Johnson*, 174 Cal. 55 [Ann. Cas. 1918E, 560, L. R. A. 1917C, 477, 161 Pac. 1155]; *Averdieck* v. *Barris*, 63 Cal. App. 495 [218 Pac. 786]; *Gornstein* v. *Priver*, 64 Cal. App. 249 [221 Pac. 396].) Evidently the trial court accepted the respondent's version of the circumstances of the accident as true. The question of the existence of contributory negligence is ordinarily one of fact to be determined by the court or jury. (1 Thompson on Negligence 408, sec. 425; 29 Cyc. 631; *Kelly* v. *Santa Barbara etc. R. R. Co.*, 171 Cal. 415, 423 [Ann. Cas. 1917C, 67, 153 Pac. 903]; *Phillips* v. *Pacific Electric Ry. Co.*, 89 Cal. App. 122 [264 Pac. 538].) Where the testimony is conflicting as to contributory negligence and the finding of the court is supported by substantial evidence, it will not be disturbed on appeal. (19 Cal. Jur. 783, sec. 168.) The evidence in the present case is ample to support the court's findings that the accident was the proximate re-

sult of appellants' negligence and that respondent was not guilty of contributory negligence.

In the course of the trial appellants called and examined at length Mr. Lawson, the driver of the Fordson tractor. At the request of appellants this witness had previously signed a written statement of the circumstances of the accident which conflicted in certain respects with his testimony given at the trial. The appellants, however, failed to suggest either to the witness or to the court that this conflict existed, or that appellants were taken by surprise by the testimony which he gave at the trial. The former written statement was not mentioned on the chief examination of the witness. At the close of a lengthy cross-examination by respondent, the following proceedings occurred: Mr. Holl, examining the witness for respondent, asked: "Q. When you were twenty-five feet from the place where you first saw Mr. Rignell this Chevrolet passed you? . . . A. Yes. Q. Now Mr. Lawson before coming here today, I take it (for granted) you discussed your testimony? A. I gave a statement the first day when Mr. Curtaz came around. Q. Who is Mr. Curtaz?" Mr. Reardon, attorney for appellants, replied: "He is right down there. . . . " Mr. Holl continuing: "Q. The only person you spoke to since the date of the accident . . . was Mr. Curtaz? A. Yes. Q. That was the written report you gave him at the time? A. Yes." Mr. Reardon speaking to counsel for respondent: "I show you the statement. Ask him if this is the statement, as long as you have asked him about it." Mr. Holl continuing: "Q. Is that the statement? A. Yes." Mr. Reardon speaking: "Are you going to introduce it in evidence?" Mr. Holl replying: "No." Then resuming the examination of the witness: "Q. Mr. Font was there, and you had a blackboard and measurements, and locations were fixed where the accident occurred? A. I didn't see any measurements on it. I told them (it was) between twenty-three and twenty-five feet (from me) where the accident occurred. Q. Did you tell Mr. Reardon . . . that this Chevrolet passed your machine . . . twenty-five feet from the place of the accident?" Mr. Reardon addressing the court: "I think the statement is the best evidence." Mr. Holl replying: "I will not press the question." Thereupon Mr. Reardon took

the witness upon redirect examination, and merely exhibiting the document, asked: "Q. That is your signature? A. Yes. Q. It is dated December 17, 1924, and witnessed by Benjamin Curtaz? A. Yes sir." Addressing the court, Mr. Reardon then said: "I would like to read it (in evidence)." Mr. Holl: "I object to that as not proper redirect examination." The Court: "I will sustain the objection." Mr. Reardon: "Counsel has gone into it. . . . I would like to make a formal offer of the statement of Harry O. Lawson, dated December 17, 1924, on behalf of the defendants in this case." The Court: "He has not read any part (of it) . . . He did not say anything about the statement, or its contents. . . . The objection is considered to have been made on the grounds stated by counsel, and it is sustained."

It is contended by appellants for the first time on appeal that they were entitled to read this contradictory statement of their own witness to impeach him. It will be observed, however, that the former written statement was not offered by appellants on the ground that they were taken by surprise at the evidence which was given at the trial; nor did they suggest either to the witness or to the court that this written statement contained assertions in conflict with the testimony given at the trial. No conflicting statements were called to the attention of the witness, nor was his written statement offered to him for his examination. He was not aware of the fact that appellants even contended that he had made conflicting statements, and he was given no opportunity to explain or correct any such variance in the statements which the document may have contained. Upon the contrary, it is evident that the appellants did not offer the former written statement in evidence for impeachment purposes, but rather assumed that because counsel for respondent had referred to it, that therefore they were entitled to have the entire document received in evidence. However, the moment appellants suggested that the document was the best evidence of its contents, the subject was abandoned, and it was not again referred to. No part of the contents of this statement was read or offered by respondent. No foundation was laid for impeachment. There was therefore no error in refusing to receive the document in evidence. Under the circumstances

it was incompetent for any purpose, and the objection was properly sustained. Section 2052 of the Code of Civil Procedure provides: "A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them." It would be eminently unfair to a witness to seek to impeach him without calling his attention to the specific statements which it is claimed he has fabricated, and giving him an opportunity to explain or correct the alleged discrepancy. This is absolutely necessary before one may impeach either his own or an adverse witness. (6 Jones Com. on Ev. 4810, sec. 2431; 7 Enc. of Ev. 109, sec. 6b; *People* v. *Lambert*, 120 Cal. 170 [52 Pac. 307]; *People* v. *Orosco*, 73 Cal. App. 580, 592 [239 Pac. 82]; *Hyde* v. *Buckner*, 108 Cal. 522 [41 Pac. 416].)

The judgment is affirmed.

Nourse, J., and Koford, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 6, 1928.

All the Justices concurred.