[Civ. No. 4160.   Fourth Dist.   Dec. 7, 1950.]

CARMEN ANGELA ALTOMARE, a Minor, etc., Respondent,
v. SILAS WILLIAM HUNT et al., Appellants.

Spray, Gould & Bowers for Appellants.

Meyer & Dreizen for Respondent.

BARNARD, P. J.—The plaintiff, who was 6 years old, was injured by a truck owned by the defendant partnership and driven by the defendant Downs. The accident occurred at 8:30 a. m. on June 29, 1948, on a private road in a trailer court near Santa Ana. This trailer court had three roads running north and south. The middle one was a graveled road 21 feet wide. On the west side of this road there was a laundry and toilet building 45 feet long, 20 feet wide and 12 feet high. The east side of this building was flush with the west edge of this road. A 3-foot sidewalk leading from the front of the premises passed along the north wall of this building and ended abruptly at the edge of the road, at the northeast corner of the building. The plaintiff lived with her parents in this trailer court at a point east of this road. The court was almost completely filled, and about 100 children were then living there.

Downs had also been living in this trailer court for five months, and was familiar with the conditions there. As a part of his milk route he had been delivering milk every other day at various trailers in this court. On this occasion he was traveling north on this middle road. He stopped his truck on the west side of the road and made a delivery at a point 25 feet south of the south end of the laundry building. He then drove north on the west or the wrong side of the road, intending to make the next delivery at a point north of the laundry building and also on the west side of this road. At the same time the plaintiff came along the sidewalk to the north of the laundry building, proceeding east on her way to her home. She took a step or two off the sidewalk and upon the road when the left front wheel of the truck ran over her right foot and knocked her down. The truck stopped within a few feet. The defendant testified that he was traveling with the left side of his truck 4 or 5 feet from the laundry building; that there were some cars parked on the easterly side of the road; that he knew that "children were walking and playing around the trailers and in and around the driveways"; that he did not see the girl until she ran out from be-

hind the building; and that "it would have been impossible for anybody to see her before it happened—on account of the laundry room is built right up against the end of the road. There is no setback on the laundry room, it is right next to the road." Other witnesses testified that there were no cars on the other side of the road; that after it was stopped the truck stood 3 feet from the edge of the road and the end of the sidewalk, which was the building line; and that as the plaintiff proceeded easterly along this sidewalk she was walking and not running. The jury returned a verdict in favor of the plaintiff and the defendants have appealed.

The sole ground of appeal is that the court committed reversible error by giving one instruction which reads: "You are instructed that the driver of a motor vehicle on a private road is required to drive on the right-hand side of said private road." It is argued that the provisions of the Vehicle Code have no application to private roads; that the common law rule of the road requiring vehicles to keep to the right applies only with respect to other vehicles; and that this rule has no application with reference to a pedestrian. It is further argued that Downs could not possibly see this child in time to prevent the accident; that he "was under no duty to foresee that a child would dart into his path"; that the evidence was conflicting as to whether she was walking or running at the time; and that this instruction was prejudicial on the issue of his negligence, and thus constituted reversible error.

At the request of the defendants the court also gave this instruction:

"The Court may have instructed you that it is the duty of the driver of a motor vehicle on a private roadway to drive on the right-hand side of the road. This does not mean that it is the duty of such driver under all circumstances to drive on the right-hand side of the roadway. It simply means that it is his duty to drive on the right-hand side of the road unless his failure to do so is excusable under all the circumstances for causes or things beyond his control."

The court also gave the usual instructions on negligence and contributory negligence, including one setting forth the sudden peril doctrine.

While the provisions of the Vehicle Code are not applicable here, we are unable to agree with the contention that this driver was under no duty to foresee that such an accident was likely to happen. He was driving on the wrong side of the road, and close to this building; he knew the dangerous con-

dition which existed at the north end of this building, where the sidewalk ended and people going east would cross the road; he knew that many children were about, and that they might be expected to come out at that point for the purpose of crossing the road; and he himself testified that it would be impossible for anyone traveling where he was to see a child coming into the road, before an accident happened. With full knowledge of the hazard involved, he drove north on the wrong side of the road, within 3 or 4 feet of the building, knowing that he could neither see nor be seen by anyone coming out, until the last split second.

The duty of a driver to keep upon the right side of the road has been so established as a custom as to have the same effect as if it were the law. (*Brown* v. *Yocum,* 113 Cal. App. 621 [298 P. 845].) The universal custom of operating vehicles on the right side of the road has established a standard of care which is required of all drivers whether they are traveling on a public road or a private road. (*Sills* v. *Forbes,* 33 Cal.App.2d 219 [91 P.2d 246].) In our opinion, this well established rule of the road cannot be limited in its application to cases where other vehicles are involved, but it applies with respect to a pedestrian who is legally entitled to use the road. A pedestrian may rely on the expectation that automobiles will conform to customary rules of traffic and travel only on the proper side of the road. (*Rignell* v. *Font,* 90 Cal.App. 730 [266 P. 588].) A rule of this nature is for the benefit of anyone who might be injured as a result of its violation. (*Sartori* v. *Granucci,* 204 Cal. 28 [266 P. 280].)

This general rule of the road was especially applicable here because of the existing situation and conditions. The building shut off the view, and the distance from the building to the center of the road was extremely short. Downs was under the duty of using reasonable care in view of those circumstances. Under the existing conditions, driving so close to that building was a violation of that duty. This clearly appears from his own testimony that it would have been impossible to have seen anyone coming into the road before the accident happened. On this narrow road reasonable care would, in itself, have required that he drive on the right half of the road unless prevented from so doing by something on that side of the road. His testimony that there were cars parked on the other side of the road was contradicted by several witnesses, and the jury impliedly found to the contrary. Under the

facts in this case, it was not error to instruct the jury that this driver was "required" to drive on the right side of this road, unless his failure to do so was excusable because of other circumstances.

The instruction did not state that a driver was required by statute to drive on the right-hand side of a private road. It stated a well recognized and long established requirement, based on universal custom in this country, which had a proper application under the facts brought out by the evidence. If further qualification was needed or desired it should have been asked for.

If it be assumed that the instruction complained of could have been worded a little better, no prejudice appears under the facts of this case. Moreover, that proposed instruction was handed to the defendants at the beginning of the trial. Instead of contending for a contrary rule they accepted the general principle and requested an instruction, which was given, which explained that while this was the rule it would not apply where a failure to comply with the rule was excusable because of other circumstances. The case was tried on that theory and the giving of the instruction should not now be held to have been prejudicial.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.