[Crim. No. 746. Fourth Dist. Mar. 9, 1951.]

THE PEOPLE, Respondent, v. THEODORE H. ABAIR, Appellant.

Bertram J. Brown for Appellant.

Fred N. Howser, Attorney General and Dan Kaufmann, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant, in an amended information, was charged with the crime of sale of narcotics, a felony, alleged to have been committed on or about the 10th day of

January, 1950. The information also charged defendant with a prior conviction of the unlawful possession of marijuana. Defendant pleaded not guilty and admitted the prior felony conviction. A jury trial was had and the defendant was found guilty as charged. After his motion for a new trial was denied, he was sentenced to the state's prison.

Defendant appeals from the judgment of conviction and from the order denying his motion for a new trial.

The defendant contends that the court erred (1) In refusing to admit the testimony of an attorney on the ground that it concerned privileged communication; (2) In not instructing the jury on accomplices and that an accomplice's testimony must be corroborated; and (3) In not allowing counsel for appellant to impeach the testimony of one of the witnesses when he was called by the appellant.

### STATEMENT OF FACTS

On January 5, 1950, a State Narcotic Division agent contacted one Floyd Williams for the purpose of purchasing marijuana. Williams attempted to locate a supply at several places and, not being successful, took the agent to his home near 31st and K Streets in San Diego. There he placed a telephone call to a number given him by one of his contacts and talked to a person named "Ted." "Ted" refused to bring the marijuana at that time and requested Williams to call him the next day. The following day Williams sold to the undercover agent three cans of marijuana which he had obtained from "Ted."

On the evening of January 10th, Williams called the defendant and asked him to bring six cans of marijuana. Williams was waiting for the defendant near 31st and K Streets when a car drove up, operated by another state agent, whose connection with the state office was not known to Williams. Williams went over to this car and was introduced to the agent by a person named Abbott, who was known to Williams. Shortly thereafter, the defendant and his wife drove up in a Willys sedan and parked at the back door of Williams' house. Williams proceeded to the sedan, where he found the defendant and his wife. Williams told the defendant to drive around the block while he went back to the other car to tell its occupants that he had to go to get the marijuana and told the defendant that he had a man that was going to buy six cans. Williams went back to the state car and then returned to defendant's car, getting in the back seat. After driving some

distance, the defendant stopped the car at the top of a hill and obtained a sack from some bushes and handed it to Williams, who put it in the back seat of the car. This sack contained six cans of marijuana. Williams and the defendant then returned to 31st and K Streets, passing the undercover car, proceeded to the alley, parked and entered the Williams' house, where Williams poured the contents of the cans into a paper box. He then put the marijuana back into the cans, leaving a little from each can in the paper box for his own use. Williams awakened his wife, introduced her to the defendant's wife and told her that he had some marijuana in the closet; that he would be back in a few minutes. He put the six cans back into the paper sack, put the sack under his overcoat and proceeded to the undercover car, where he handed the cans which contained the marijuana to the state undercover agent, who gave him $80 therefor. Williams was then placed under arrest by the agent. Law enforcement officers, who were in the vicinity, immediately came to the scene of the arrest. These officers had witnessed the arrival of the state undercover car; they saw Williams get out of the car and walk into the alley, where he disappeared from view; saw the Willys turn into the alley and disappear; they witnessed the return of Williams to the state car and saw the Willys being driven from and return to the scene and disappear into an alley.

The officers proceeded to Williams' house, where they found the Willys sedan, then entered the house and found the defendant, his wife and Mrs. Williams therein. Mrs. Williams, when she heard the officers, retrieved the paper box from the closet and flushed most of the contents down the toilet, leaving some marijuana debris, which was recovered by the officers.

Upon being questioned, the defendant stated that his name was Ted Abair and that he had come over to sell a car to Williams; that the Willys sedan was his and that he was the only one that drove it. Defendant was taken to the police station and upon being again questioned, stated that he and his wife had gone to the Williams' house to play cards. On being asked if he brought the marijuana to the house, he stated that the officers would have to ask his attorney.

Witness Dan Abbott, who was with the undercover agent in the state car, identified the defendant and his wife as being the occupants of the Willys sedan upon both occasions when it was driven by the vicinity of 31st and K Streets.

The defendant took the witness stand in his own behalf and claimed that he had merely gone over to Williams' house to play cards; that Williams had borrowed his car and left the house; that he had nothing to do with obtaining the marijuana; that he arrived at the Williams' house about 11:30 in the evening and admitted that he had no money in his possession.

The circumstances attending the claimed error of the trial judge in refusing to admit the testimony of an attorney on the ground that it concerned a privileged conversation were as follows: At the former trial of the instant action in which the jury disagreed, the defense was permitted to introduce the testimony of an attorney who had a conversation in his office with Williams and the defendant and their respective wives. The attorney testified, in substance, that at this conference Williams had exonerated the defendant from any complicity in the offense with which he was charged; that Williams stated that the defendant and his wife did not know anything about the marijuana transaction at all and had not been in the Willys car when he, Williams, used it; that the defendant and his wife were at the Williams home on the night of January 10th for the purpose of playing cards. The record reveals that the defendant and Williams at the time of this conversation were subject to the charge of illegal possession of narcotics arising out of the transaction whereby the defendant sold marijuana to Williams on January 10th. The defendant had retained Attorney Hervey when he met Williams, who was then seeking the services of an attorney. The defendant invited Williams to make use of the services of his attorney if he were unsuccessful in hiring his own counsel. As a result of this suggestion, the conference took place in the attorney's office. It further appears that the conversation was all concerning the transactions in which all parties seemingly had been engaged and for which they were liable for criminal prosecution. It further appears that at the conference Williams stated to Attorney Hervey that he was interested in engaging his services to represent him and his wife, as well as the Abairs at the preliminary examination and that Attorney Hervey told Williams that he saw no reason why he should not represent both him and the defendant and that the fee would be $350 for the preliminary examination.

The record of the testimony taken at the previous trial leading up to the introduction of the testimony of Attorney

Hervey is not before us, but it is apparently conceded that there was no objection then made to such testimony by anyone, nor does it appear from the record that Williams was present in court or was being questioned when the attorney's testimony was introduced or that Williams was afforded any opportunity to object to the introduction of such evidence.

At the second trial, while Williams was on the stand and being cross-examined, he was asked if he recalled talking to Mr. Edgar Hervey, an attorney, in his office and his answer was that he did. Mr. Brown, counsel for the defendant, then asked Williams to read certain testimony taken at the preliminary examination. The trial court then informed Williams that the communication made by him to Attorney Hervey was privileged and that it could be objected to on that ground. The deputy district attorney then objected to the reading of the testimony to the witness on the ground that there was no foundation laid. Witness Williams then objected on the grounds that it was a privileged communication and the objection was sustained by the court. No further questions were then asked Williams as to the statements made to Attorney Hervey and the witness was excused. Subsequently, defendant's counsel called Attorney Hervey and attempted to introduce evidence of the communications made to him by Williams. Williams, who was then in court but not on the witness stand, was asked if he objected to Mr. Hervey stating any of the conversation that was held in his office and Williams replied in the affirmative. The objection was sustained and the counsel for the defense then offered the testimony of Hervey taken at the first trial. The court denied its admission into evidence. It is apparent that the offered testimony was inadmissible for impeachment purposes.

As was said in *People* v. *Collup*, 27 Cal.2d 829, 836 [167 P.2d 714]:

"It is undoubtedly the general rule that : 'A witness may also be impeached by evidence that he had made, at other times, statements inconsistent, with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places, and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them.' (Code Civ. Proc., § 2052.)"

And as was said in *People* v. *Malicoat*, 89 Cal.App.2d 742, 745 [201 P.2d 850]:

"'It is indispensable to a valid impeachment on the score of inconsistent statements that the statement sought to be

proved be the one to which the attention of the person sought to be impeached was called by the foundation questions. The proper and usual procedure is to ask the impeaching witness the direct question whether the alleged statements were made at the time and under the circumstances specified, and such questions are not objectionable as being leading.' (27 Cal. Jur., Witnesses, § 139, p. 166; *McLaughlin* v. *Los Angeles Ry. Corp.*, 180 Cal. 527, 539 [182 P. 44].) Counsel should be careful to limit the impeaching question to the precise conversation as to which the foundation has been laid in interrogating the witness sought to be impeached. It is error to permit the impeaching witness to testify to any other matter which may have been stated in the conversation."

In *Burns* v. *California Milk Transport*, 89 Cal.App.2d 70, 74 [200 P.2d 43], the court, quoting from *Rignell* v. *Font*, 90 Cal.App. 730, 737 [266 P. 588], said:

" 'It would be eminently unfair to a witness to seek to impeach him without calling his attention to the specific statements which it is claimed he has fabricated, and giving him an opportunity to explain or correct the alleged discrepancy. This is absolutely necessary before one may impeach either his own or an adverse witness.' The methods prescribed in the code for impeaching a witness are exclusive, and, in general, are applied strictly. (*People* v. *Holman*, 72 Cal.App.2d 75, 97 [164 P.2d 297], and cases cited)."

Furthermore, the record indicates that Williams went to see Attorney Hervey for the purpose of employing him as his attorney and that the conversation concerned charges which Williams was then facing and involving the transaction with the defendant on January 10th. Since the communication by Williams to Attorney Hervey was made pending negotiations for the latter's retention as attorney, it was privileged under section 1881, subdivision 2 of the Code of Civil Procedure.

In *People* v. *Dorrance*, 65 Cal.App.2d 125, 129 [150 P.2d 10], the rule stated is that when the communication is made pending negotiations for retaining the attorney it is privileged, notwithstanding that the attorney's acceptance of the employment is eventually refused.

In *Estate of Dupont*, 60 Cal.App.2d 276, 288 [140 P.2d 866], the court said:

"It is the almost universal rule in common law jurisdictions that 'Where a person consults an attorney with a view to

employing him professionally, any information acquired by the attorney in the course of interviews or negotiations looking toward such employment is privileged and cannot be disclosed, even though no actual employment of the attorney as such follows, and notwithstanding the attorney may be afterward employed by the adversary of the person who made such communication.' (90 C.J. 406; 8 Wigmore on Evidence, 3d ed. (1940) sec. 2304, pp. 587-8; 5 Chamberlayne, Modern Law of Evidence (1916) sec. 3682, p. 5266; cases collected in notes in 21 Ann.Cas. 217; Ann.Cas. 1913A 30; and 34 L.R.A.N.S. 578-9.)''

It is argued that because the conversation was held in the presence of the appellant and his wife, the privilege was waived. However, all four of the parties present at the conversation were charged with violation of the narcotics laws arising out of the sale of marijuana to Williams on January 10th, and the conversation was directed in some degree to the participation therein by the four persons present. Attorney Hervey at the time indicated that he could represent all four of the parties present and under such circumstances, we conclude that their communications to him, as far as concerns strangers, were privileged. (*In re Bauer,* 79 Cal. 304, 312 [21 P. 759]; *De Olazabal* v. *Mix,* 24 Cal.App.2d 258, 262 [74 P.2d 787]; *Croce* v. *Superior Court,* 21 Cal.App.2d 18, 20 [68 P.2d 369].)

The argument is advanced that the failure of the witness Floyd Williams or counsel for the People to object to the offered testimony at the first trial amounted to a waiver of the privilege, if any ever existed. However, as heretofore noted, it does not appear that Williams had an opportunity at the first trial to voice an objection and the testimony apparently was admitted in view of representations of counsel to the court that the conversations were not privileged. Under the circumstances shown, there was no waiver of the privilege.

Defendant complains that the trial judge erred in refusing to instruct the jury as to the law relating to accomplices and the requirement that an accomplice's testimony must be corroborated. Section 1111 of the Penal Code defines an accomplice as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given. The information charged the defendant with the sale of narcotics and there was substantial evidence that this sale was made to Williams. Under the definition set forth in the Penal Code

section, Williams, being the purchaser, was not liable to prosecution for the identical offense charged against the appellant, who was guilty of selling. It appears that Williams was charged with and pleaded guilty to violations of the narcotics laws but not that he was charged with the unlawful sale alleged against the defendant. It appears, therefore, that there was no error in refusing the requested instructions. Where, as here, the purchaser of the narcotics testified against the seller, there were two distinct crimes committed. (*People* v. *Galli,* 68 Cal.App. 682, 684 [230 P. 20] ; *People* v. *Lein,* 204 Cal. 84, 86 [266 P. 536] ; *People* v. *Lima,* 25 Cal.2d 573, 578 [154 P.2d 698].)

Defendant contends that the testimony of Williams is not corroborated. This contention is without merit. The activities reported by Williams were corroborated by the police officers who saw the defendant's car when it picked Williams up and returned with him. They found the car parked outside of Williams' house and the defendant and his wife in the Williams home. Defendant admitted to them that he was the driver of the car and witness Abbott identified the defendant as such on both occasions at the Williams' house. Defendant, in explaining his presence at the Williams' house on the night of January 10th, told inconsistent stories. At one time he said he went there to sell a car, and at another stated he went there to gamble, neither of which statements was apparently true.

Finally, it is contended that the court erroneously refused to permit counsel for the defendant to testify in impeachment of a witness called by both the People and the defendant. The record shows that the evidence sought to be introduced was to the effect that the witness Abbott told Williams' attorney that unless the defense gave him $40 he would testify falsely in court and that he saw the defendant driving the Willys sedan on the night of January 10th. The testimony sought to be introduced, if erroneously excluded, could not have affected the outcome of the case, as the defendant had admitted driving the car on the night in question. Under the circumstances shown by the record, the trial court did not abuse its discretion by refusing to permit the offered testimony.

Judgment and order affirmed.

Griffin, Acting P. J., concurred.