[Crim. No. 5125. Second Dist., Div. Three. Dec. 7, 1954.]

THE PEOPLE, Respondent, v. HARRY KOR, Appellant.

Gary W. Sawtelle and John Joseph Hall for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Alan R. Woodard, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Harry Kor and one Kaufman were charged with violation of section 11500 of the Penal Code (unlawful possession of heroin). In a trial by jury both defendants were convicted. Kaufman's motion for a new trial was granted, and the cause was then called for immediate trial, trial by jury was waived, and the cause was submitted upon stipulation. On such retrial, Kaufman was acquitted. Kor's motion for a new trial was denied and he was sentenced to the state prison. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the relationship of attorney and client existed between him and Attorney Joseph Rosen, and that the court erred prejudicially in receiving, over appellant's objection, testimony of Attorney Rosen regarding confidential communications between the attorney and appellant.

Three police officers testified in substance that on March 25, 1953, about 1:30 p. m., while they were traveling in an automobile west on Brooklyn Avenue they saw the defendants traveling in an automobile east on that avenue—that is the automobiles, going in opposite directions, passed each other on that avenue; then the driver of the officers' automobile turned their automobile around and proceeded to follow defendants; within a few blocks the defendants turned south onto Pleasant Avenue, a side street; when the officers turned onto the side street, defendants' automobile was not in sight but within a few moments the officers saw it as it was returning to Pleasant Avenue from another side street (Summit Avenue, a short dead-end street leading from Pleasant Avenue); the officers overtook the defendants and stopped them near the intersection of Pleasant and Summit Avenues; Kor was driving the automobile and Kaufman was on the right side of the front seat.

Officer Decious testified that he found a package—a newspaper package—in the center of the front seat of the automobile the defendants were in; and he delivered the package to Officer Arredondo who had Kor in custody.

Officer Arredondo testified that the package was about 1 inch wide and 3 inches long; Kor said that the package was his, that "some fellow" had told Kor "to pick it up there [by the curb on Summit]," and that Kaufman had picked it up for Kor. He also testified that Kaufman said he had just picked the package up for Kor from a place by the curb on Summit Avenue, that Kor was giving him a ride home and Kor drove by that place on Summit Avenue and asked him to pick up the package, and that he did not know what was in the package but he had an idea what was in it.

Officer Jones testified that Kaufman said that he had just picked the package up for Kor; that Kor said that the automobile in which defendants had been riding was his; the officer (witness) asked Kor if the "caps" belonged to him; and Kor replied, "Yes." He also testified that in another conversation, in the presence of Kor, Kaufman asked

the officers to give him (Kaufman) a break and stated that he was just on his way home and Kor told him to pick up the package; then Kaufman asked Kor to tell the officers that Kaufman did not have anything to do with "this," and he said further, "All I did was pick it up for you"; Kor said, "Yes. That is right."

The package contained 50 capsules of heroin.

Kaufman testified that he was at a street corner waiting for a bus, and he thumbed a ride as Kor came there in his automobile and stopped at the traffic signal; after he was in the automobile he told Kor he was going to Fourth and Soto Streets; they went on Macy Street toward that neighborhood; he had seen Kor twice over a period of two months, and he had ridden with him once previously; when they reached Pleasant Avenue, Kor turned onto Pleasant Avenue and went to Summit Avenue—a little dead-end street about 30 feet long; Kor turned onto Summit, stopped the car, opened the door, pointed to a package and asked Kaufman to hand it to him; Kaufman stepped out of the car—about one step—picked up the package, got back into the car and handed the package to Kor; then the car started to leave and the police arrived; he did not know, and he had no idea, what was in the package; he asked the officers why he was being arrested, and he also stated that he "had nothing to do with it," and that he had just picked it up.

Kor testified that he was in his automobile and coming to a stop at a street corner when Kaufman called his name; Kor stopped and Kaufman got into the automobile; Kor had known Kaufman about two months, and Kaufman had ridden with him twice previously; Kaufman asked him to go to Macy Street, and said that he wanted to pick up a package; they went, as directed by Kaufman, and turned into the little side street and Kaufman said, "This is the place"; then Kaufman got out and picked up the package; about that time Kor saw a car coming down the street; Kaufman said, "There goes the heat," and "Listen, Harry, I am in a jam already. Here is the package. Tell them it is yours"; Kaufman also said: "I will make it worth your while if you tell them it is yours"; Kaufman then said, "Get out of here, scoot"; after they had gone about half a block Kor said that he would tell that to them; when they saw the officers they (defendants) speeded up; the officers apprehended them about half a block from Summit Avenue; he told the officers that the package was his.

Kaufman also testified, on direct examination, that while they (Kaufman and Kor) were in jail he or Kor "contacted" an attorney. They saw Mr. Joseph Rosen, an attorney (from the office of Mrs. Root), in the interview room at the jail; at that time (the evening following the arrest) the two defendants and Mr. Rosen were present, and Kor made the statement that it was his car, that Kaufman was a passenger, that Kor asked Kaufman to hand the package to him, that Kaufman did not know what it was, and Kaufman handed it to him. On cross-examination, by counsel for Kor, Kaufman said that Kor "put out a call" and asked for Mrs. Root's office.

Kor also testified, on direct examination, that in the conversation with Mr. Rosen he told Mr. Rosen "what had happened and how it happened," and he made arrangements, and Mr. Rosen said it would cost $350; that "all that was discussed was getting out on a writ"; that Mr. Rosen did get him out on a writ. On cross-examination of Kor, by counsel for Kaufman, the following questions were asked and the following answers were given: "Q. And at that time [conversation with Mr. Rosen] didn't you make the statement to Mr. Rosen that it was yours, and Mr. Kaufman knew nothing about it? A. I don't think I said that. Q. it is your testimony now that you made no such statement to Mr. Rosen? A. I might have said it was mine, yes. A. Were you still taking the blame for Mr. Kaufman? A. Yes; I had already told him I would take the blame."

Counsel for Kaufman subpoenaed Mr. Rosen, and called him, as a witness. He testified on direct examination that he is an attorney; on March 25, 1953, he received a call from jail concerning Kor and Kaufman; the call was from both Kor and Kaufman; he went to the jail and had a conversation with Kor and Kaufman in a small (10 x 10) interrogation room where the three of them "were left alone." He was asked to relate the conversation. He said that he refused to testify to that conversation on the ground it was a confidential communication between attorney and client. Counsel for Kor objected to the conversation on the ground that it was privileged. Counsel for Kor requested permission to ask questions on *voir dire* as to the relationship. The permission was granted and, in response to questions, Mr. Rosen testified that he had Kor sign a contract, and he received $100 and the contract from Kor on that occasion; the $100 was part of a retainer fee. The judge overruled the objection of Kor's

counsel and said, "Mr. Rosen, you are ordered to answer the question." Mr. Rosen said that he felt that this was an attorney and client relationship and that is why he objected, and that "I am doing this only under the penalty of contempt. I take it that your honor will hold me in contempt if I refuse to testify." The judge said, "You take it correctly, Mr. Rosen." Counsel for Kaufman then said, "I will ask you with regard to the specific charges in this case, for which you were called there, in regard to the possession of narcotics." Mr. Rosen said: "I asked Mr. Kor to relate the facts of his arrest to me, what part he played and what part Kaufman played. Mr. Kor told me that he had picked up Kaufman earlier that day on the street corner, Mr. Kaufman was going home and he, Kor, was giving Kaufman a ride home; that after picking Kaufman up and on the way that Kaufman drove over to a certain location, . . . . told Kaufman to get out of the car and pick up a package that was lying in the street or the sidewalk or gutter, that was wrapped in newspaper, and that Kaufman picked up that package and brought it back, put it in the front seat of the car, Kor's car, that Kaufman did not know what was in that package but was working—picked it up at the direction of Kor. I asked Kor what was in the package and he told me 5 grams of heroin. I asked him how much 5 grams of heroin was and he said, well, that was about 50 caps. I asked him when he was arrested and he said shortly after that the police pulled him over and arrested him and Kaufman. I asked if that was the story that he told the police when he was arrested. He said that it was."

The relationship of attorney and client existed between appellant (Kor) and Mr. Rosen at the time of the conversation which was the subject of Mr. Rosen's testimony. Such relationship also existed between Kaufman and the attorney. When the defendants were in jail Kaufman told Kor to tell the jailer that he (Kor) wanted Mrs. Root as his attorney. Kaufman knew her previously. Both defendants sent a telephone message, by the jailer, to the law office of Mrs. Root, requesting legal aid. In response thereto Mr. Rosen, an associate in that office, went to the jail and conferred with both defendants while both defendants were present. Kor made a written contract with Mr. Rosen, employing him as his attorney, and paid him $100 as part of the fee.

The attorney general asserts that the conversation between Kor and his attorney was not a privileged communication, be-

cause the conversation was had in the presence of Kaufman.

In the case of *People* v. *Abair*, 102 Cal.App.2d 765 [228 P. 2d 336], the defendant was charged with illegal sale of marihuana. One Williams and his wife and the wife of defendant Abair were involved in the transaction and were subject to criminal prosecution. Defendant, who had retained an attorney, invited Williams to use the services of the same attorney. The attorney had a conference, in his office, with defendant and Williams and their wives concerning the said transaction as to which the four clients were subject to prosecution. ▆▆▆ In a prior trial of that case, wherein the jury disagreed, the defense was permitted to introduce testimony of the attorney regarding a conversation he had with Williams during that conference. The attorney, Mr. Hervey, had testified in substance (in the prior trial) that in said conversation Williams had exonerated Abair from any complicity in the offense, and had said that Abair and his wife did not know anything about the marihuana transaction. At the second trial, Mr. Brown, the attorney for defendant at that trial, called Mr. Hervey, the attorney who had conferred with Abair and Williams (and their wives), as a witness and attempted to introduce evidence of the communications made to him by Williams. Williams, who was in the courtroom, objected to Mr. Hervey stating any of the conversation. The objection was sustained. Mr. Brown then offered in evidence the testimony of Mr. Hervey which was taken at the first trial. The offer was rejected. The court said (p. 772) : ''It is argued that because the conversation was held in the presence of the appellant [Abair] and his wife, the privilege was waived. However, all four of the parties present at the conversation were charged with violation of the narcotics laws arising out of the sale of marijuana to Williams on January 10th, and the conversation was directed in some degree to the participation therein by the four persons present. Attorney Hervey at the time indicated that he could represent all four of the parties present and under such circumstances, we conclude their communications to him, as far as concerns strangers, were privileged.'' In the present case, when the defendants and their attorney Mr. Rosen had the conversation, both defendants were in jail upon charges arising out of the same narcotics transaction. The conversation pertained to the participation of both defendants in the offense charged. Under these circumstances the communications of each defendant with his attorney were privileged, even though the other de-

fendant was present when the communications were made. The state (respondent herein) was a stranger as to those communications, and it could not require the attorney, merely because both clients were present, to disclose the information he received from one or both of them in such a confidential conference.

Respondent also asserts that the conversation between Kor and his attorney was not privileged, because the conversation embodied statements which Kor had made to the officers and therefore Kor did not regard his conference with his attorney as privileged. Kor's defense was that he made an agreement with Kaufman, while the officers were approaching, that he would take the blame for Kaufman's acts because Kaufman was "in a jam already"; and that he would tell the officers the package was his. He made that statement to the officers and presumably he made it to his attorney. When he was a witness, however, he testified to the effect that the package was not his, he had driven to the place as directed by Kaufman, and he did not know what was in the package. If his statement to the officers and his attorney was not true, then of course as a witness, if he had proper regard for his oath, he would not repeat that statement even though he had made said agreement with Kaufman and, pursuant thereto, had previously attempted to accommodate Kaufman by taking the blame. It seems clear that Kor regarded his conference with his attorney as confidential and that he did not intend that his attorney should be a witness against him even to repeat any statements that Kor had made to the officers. ▮ It cannot be said that, merely because Kor's conversation with his attorney included statements previously made to officers, he did not regard his conversation with his attorney as confidential and privileged.

▮ Respondent asserts further that, assuming the conversation with the attorney was privileged, the privilege was waived by Kor's failure to object to the testimony of Kaufman who first testified regarding the conversation with the attorney. Kor's contention here is that it was error to permit *his attorney* to testify as to the conversation. Testimony by Kaufman, who had picked up the package and was attempting to exculpate himself, was quite a different matter from testimony by the attorney in whom Kor had confided in seeking legal advice. It might well be that Kor's counsel considered that, under the circumstances, the jury would not regard Kaufman's version of the conversation as of any importance,

and for that reason he deemed it advisable not to object to Kaufman's purported recital of the conversation. It was the testimony of the attorney, who had conferred confidentially with Kor and Kaufman, that was of importance with respect to Kor's right to a proper application of the doctrine of privileged communications. The fact that Kaufman gave his version of the conversation, without objection by Kor, did not mean that Kor was required to forego an objection to testimony by the attorney. ■ The right to have communications between attorney and client regarded as privileged is the right of the client. Section 1881 of the Code of Civil Procedure (subd. 2) provides: "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; . . . " Kaufman could not waive the privilege for Kor. Kor's failure to object to Kaufman's testimony did not constitute consent by Kor that the attorney might testify regarding the confidential communications.

■ Respondent also asserts (in the first brief) that, assuming the conversation was privileged, the privilege was waived by Kor when he testified (on direct examination) that he told the attorney "what had happened and how it happened." Respondent asserts (in the supplemental brief) that since Kor and Kaufman testified as to the conversation with the attorney, the privileged character if any of the conversation was destroyed. With respect to the conference with the attorney, Kor testified, on direct examination, that he told the attorney "what had happened and how it happened"; that he made arrangements with the attorney, and the attorney said it would cost $350; that "all that was discussed was getting out on a writ"; that the attorney said he would get him out on a writ. Kor's statement that he told the attorney what had happened and how it happened was a general statement which did not disclose, or purport to disclose, what words were used by Kor in telling of the happening, or what in substance was said to him. That statement revealed nothing that was confidential. The other testimony by Kor on direct examination did not disclose any confidential information as to what was said about the happening—that testimony was to the effect that Kor employed the attorney and they discussed getting Kor out of jail on a writ. It thus appears there was no basis in the direct examination of Kor for a claim that Kor waived his right to

object to his attorney testifying as to privileged communication. On cross-examination by counsel for Kaufman, Kor was asked if he told the attorney that the package was his (Kor's), and Kaufman knew nothing about it. He replied that he did not think that he said that. Then he was asked: "It is your testimony now that you made no such statement to Mr. Rosen?" He replied, "I might have said it was mine, yes." Then the following questions were asked and the following answers were given: "Q. Were you still taking the blame for Mr. Kaufman? A. Yes; I had already told him I would take the blame. Q. Was this the attorney that said he would get you out in two hours? A. All he told me is, 'The attorney is going to get you out on a writ.' He didn't tell me anything about that fellow being my attorney; he said my attorney would be Gladys Root. Q. He told you he would get you out in two hours? A. That's right. Q. So when you were in Lincoln Heights [jail], just you and Mr. Kaufman and Mr. Rosen, you were still taking the blame for Mr. Kaufman? A. Yes, sir." The deputy district attorney also cross-examined Kor about the conversation with his attorney. He asked Kor as follows: "You also told Mr. Rosen that it was yours?" Kor replied, "Yes, I didn't know Rosen was the attorney; I figured he was going to get me out on a writ." The answers of Kor on such cross-examination were responsive to the questions, did not include volunteered information as to privileged communications, and were not voluntary disclosures of privileged communications. It cannot be said that Kor, by so answering such questions of Kaufman's counsel and the deputy district attorney, intended thereby to consent that his attorney might be examined as to communications made in confidence by Kor to his attorney. Such answers did not constitute a basis for a claim that Kor waived his right to object to his attorney testifying as to privileged communications.

The attorney general states in his brief that: "This office as attorney for the State realizes that the attorney-client privilege must be vigorously protected when it is used by an accused to prohibit disclosure of his confidences to his attorney. But it would be grossly improper for this office to concede that the privilege may be used as a shield to conceal the truth when the person claiming the privilege is falsely accusing another of a crime." That statement assumes that Kor was falsely accusing Kaufman, that is, it assumes that Kor's

testimony—to the effect that he agreed to take the blame for Kaufman—was false. ▮ That statement is also susceptible of the interpretation that communications between attorney and client should not be regarded as privileged communications if the client, as a witness, is not telling the truth and is using the privilege as a shield to conceal the truth. Under that view of the relationship between attorney and client, the fundamental doctrine of privileged communications between attorney and client might become of no importance since the truth of the client's testimony could easily be brought into question. In the case of *In re Ochse*, 38 Cal. 2d 230 [238 P.2d 531], it was said at page 231: "Adequate legal representation, of course, requires a full disclosure of the facts to counsel, and in order to assure that a client may safely reveal all the facts of his case to his attorney, the law has long recognized the need for secrecy with respect to communications between them." Also, said statement of the attorney general assumes that the truth would be revealed by the testimony of the attorney. In the present case, if the statements by Kor to the attorney (which the attorney testified were made to him) were made by Kor pursuant to his alleged agreement that he would take the blame for Kaufman's crime, then, even though the attorney had testified precisely as to what Kor had told him, the statement of Kor to the attorney might not be the truth as to what actually occurred in the commission of the crime. The attorney general also states that in a case such as the one at bar, where each defendant is accusing the other of the crime, "if the truth is concealed by application of the attorney-client privilege" there is danger that a guilty man may go free, and danger that an innocent man may be found guilty; and that in fact were it not for the testimony of the attorney, Kaufman might very well be in San Quentin. Conversely, it might be said that were it not for the testimony of the attorney, which tended to impeach the testimony of Kor that he was taking the blame for Kaufman, Kor might have been found not guilty.

The attorney, Mr. Rosen, objected to testifying regarding his confidential conference with Kor. Kor objected to his attorney testifying as to such conference. The deputy district attorney, Mr. Stovitz, argued that the objection should be overruled. The trial judge overruled the objections, and stated that she would adjudge the attorney guilty of contempt of court if he refused to testify. It is clear that the trial judge erred in those rulings. The error was highly prejudicial

to Kor, denied him his fundamental right to be protected against disclosure of confidential communications between him and his attorney, and prevented him from having a fair trial.

The judgment and the order denying motion for a new trial are reversed, and the cause is remanded for a new trial.

SHINN, P. J.—I concur: ██ The privilege of confidential communication between client and attorney should be regarded as sacred. It is not to be whittled away by means of specious argument that it has been waived. Least of all should the courts seize upon slight and equivocal circumstances as a technical reason for destroying the privilege. ██ Here the attorney was compelled to testify against his client under threat of punishment for contempt. Such procedure would have been justified only in case the defendant with knowledge of his rights had waived the privilege in open court or by his statements and conduct had furnished explicit and convincing evidence that he did not understand, desire or expect that his statements to his attorney would be kept in confidence. Defendant's attorney should have chosen to go to jail and take his chances of release by a higher court. This is not intended as a criticism of the action of the attorney. It is, however, a suggestion to any and all attorneys who may have the misfortune to be confronted by the same or a similar problem.

VALLÉE, J.—I concur in the opinion of Mr. Justice Wood, in the judgment, and in the comments of Mr. Presiding Justice Shinn.

Respondent's petition for a hearing by the Supreme Court was denied January 5, 1955. Traynor, J., and Spence, J., were of the opinion that the petition should be granted.